UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREGORY ALDERSON, individually and on behalf of all other similarly situated,

              Plaintiff,

  -v-

XPO LOGISTICS FREIGHT, INC.,

              Defendant.

17-CV-9329 (KMK)

ORDER

---

KENNETH M. KARAS, District Judge:

On November 28, 2017, Plaintiff Gregory Alderson ("Plaintiff"), individually and on behalf of all others similarly situated, brought this action against XPO Logistics Freight, Inc. ("Defendant"). (*See* Compl. ¶¶ 1–2 (Dkt. No. 1).) Plaintiff was a dock worker at Defendant's Albany freight terminal from July 10, 2017, through November 4, 2017. (Compl. ¶¶ 6–7.) According to Plaintiff, Defendant, as a matter of policy, did not pay Plaintiff or the proposed New York Class: (1) any wages or overtime pay, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and New York Labor Law ("NYLL"), § 650 et seq.; (2) spread of hours or split shift compensation as required by New York State Regulation 12 NYCRR § 142-2.4 ("NYCRR"); and (3) failed to furnish correct and accurate wage statements required by NYLL § 195. (*See* Compl. ¶¶ 16, 31–34, 36–37, 41–42, 49, 53.)

On October 17, 2018, the Parties submitted to the Court a proposed settlement agreement, which they request that the Court approve. (See Dkt. No. 24.) For the reasons that follow, their Motion is denied without prejudice.

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *See* Fed. R. Civ. P. 41(a)(2). The Second Circuit has held that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).[1] Consequently, "the parties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551 at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

---

[1] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA." *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

2

As a number of courts have recognized, although a court should consider the totality of the circumstances, the most dispositive factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Penafiel*, 2015 WL 7736551, at *1 (internal quotation marks omitted) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see also Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same). Conversely, factors which weigh against finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Penafiel*, 2015 WL 7736551, at *1 (internal quotation marks omitted) (quoting *Wolinsky*, 900 F. Supp. 2d at 336); *see also Garcia*, 2015 WL 2359502, at *2 (same); *Camacho*, 2014 WL 6985633, at *2 (same). Making this determination is an information-intensive undertaking, *Camacho*, 2014 WL 6985633, at *2, and therefore "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (internal quotation marks omitted).[2] To this end, courts require information surrounding "the nature of plaintiffs'

---

[2] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of*

3

claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to plaintiffs . . . , the bases of estimates of plaintiffs' maximum possible recovery, the probability of plaintiffs' success on the merits, and evidence supporting any requested fee award." *Id.* (first alteration in original) (internal quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

Having reviewed the Proposed Settlement, the Court is satisfied that it was negotiated in good faith at arms' length and that there was no fraud or collusion. The Court is also satisfied, based on the Parties' representations, that the settlement will allow the Parties to avoid the anticipated burdens and risks of litigation. However, there are several issues with the proposed settlement agreement.

First, the Court is concerned by the breadth of the settlement agreement's release provision. As noted, "the FLSA is a uniquely protective statute," and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks*, 796 F.3d at 206 (internal quotation marks omitted) (quoting *Lopez*, 96 F. Supp. 3d at 181); *see also Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiffs] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants'

---

*Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (alterations and internal quotation marks omitted).

4

payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants . . . .'"); *Mahalick v. PQ N.Y. Inc.*, No. 14-CV-899, 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015) ("An employer is not entitled to use an FLSA claim to leverage a release from liability unconnected to the FLSA" (alternations and internal quotation marks omitted)); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2015 WL 129723, at *1 (S.D.N.Y. Jan. 9, 2015) (noting court's rejection of prior settlement agreement that "would have gone far beyond terminating the present litigation, and [that] purported to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." (internal quotation marks omitted)).

The release provision here "amounts to a general release that offends the FLSA." *Gonzales*, 2015 WL 6550560, at *3. (*See also* Letter from Benjamin Weisenberg, Esq., to Court (October 17, 2018) ("Weisenberg Letter") Ex. A. ("Settlement Agreement, Receipt and Release") (Dkt. No. 25).) For example, the proposed Settlement Agreement reads in part:

> Plaintiff, on behalf of himself and [anyone who could claim by and through Plaintiff], hereby . . . fully releases . . . Defendant . . . for any and all past and present matters, [and] claims . . . including but limited to claims for unpaid wages, overtime pay, minimum wages, liquidated damages, penalties, attorneys' fees and costs, *and interest under the [FLSA], the [NYLL], any other state law, common law, or any federal, New York or other state regulations, which Plaintiff has or might have, known or unknown*, that has arisen or could have arisen at any time from the commencement of employment with Defendant up to and including the date [of] . . . this Agreement

(*Id.* at 2–3 (emphasis added).) This broad wording would potentially release Defendant from liability wholly unrelated to the FLSA, and, therefore, goes too far. *See Mahalick*, 2015 WL 3400918, at *2 ("An employer is not entitled to use an FLSA claim to leverage a release from liability unconnected to the FLSA." (alterations omitted)).

5

Second, the settlement agreement does not provide the Court sufficient information to determine "the employers' potential exposure . . . to [P]laintiff" in this matter. *See Gaspar*, 2015 WL 7871036, at *1. The Parties state that the Defendant agrees to pay Plaintiff $2,000 for alleged unpaid wages and overtimes, $5,000 for alleged liquidated and statutory damage, and $8,000 in attorney's fees, for a combined total sum of $15,000. (Settlement Agreement, Receipt and Release 1–2.) The Parties' submission does not indicate how the Parties arrived at the $15,000 figure, nor do the Parties indicate that this is a fair estimate of Defendants' potential exposure at trial. Plaintiff does not request a specific dollar amount in the Complaint. The only specific mention of an amount in the Complaint is the statutory provision that pursuant to NYLL § 195, "Defendant is liable to Plaintiff and the members of the New York Class in the amount of $250 for each violation up to $5,000 per class member . . . ." (*See* Compl. ¶ 54.) In fact, Plaintiff has not identified in any filings in this Action what amount he seeks from the Defendant. Defendant only summarily states, without explanation or supporting documentation, "[t]he funds given to Plaintiff under the settlement likely exceed 100% of what he could possibly recover were he to proceed with litigation." (Weisenberg Letter 2.) Thus, the Court cannot approve the settlement agreement until it has more information concerning Defendant's potential exposure.

Finally, the Court has very serious concerns about the attorneys' fees in this Action. Under both FLSA and the New York Labor Law, a successful plaintiff—including one who settles—is entitled to attorneys' fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), N.Y. Labor Law §§ 198, 663(1)). In the Second Circuit, courts may calculate attorneys' fees under one of two methodologies: the "lodestar" method or the "percentage of the fund" method. *See*

6

*McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund." *Lizondro-Garcia*, 2015 WL 4006896, at *3. "Under the lodestar method, 'the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.'" *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 590 (S.D.N.Y. 2015) (footnote omitted) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). "After the computation is done, 'the district court may, in its discretion, increase the lodestar by applying a multiplier based on "other less objective factors," such as the risk of the litigation and the performance of the attorneys.'" *Id.* at 590–91 (quoting *Goldberger*, 209 F.3d at 47). "Although [the Second Circuit] ha[s] acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel*, 595 F.3d at 417 (some internal quotation marks omitted). Under either approach, courts draw on the following considerations—commonly known as the "*Goldberger* factors"—when assessing the reasonableness of attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (alteration and internal quotation marks omitted).

After due consideration of all the *Goldberger* factors, the Court finds that the proposed attorneys' fee award of $8,000 is excessive. Most significantly, the size of the requested fee in relation to the total settlement—approximately 53%—is unreasonably high. *See, e.g., Johnson v. Equity Leasing Fin. II, Inc.*, No. 16-CV-1454, 2016 WL 6493157, at *2 (S.D.N.Y. Oct. 4, 2016)

7

("A fee award of 80% of the [s]ettlement is beyond the pale."); *Thornhill v. CVS Pharmacy, Inc.*, No. 13-CV-5507, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (a requested fee amount of 52% is "unreasonably high" in relation to the total settlement).

Thirty-three percent of the net settlement is typically an appropriate amount to award attorneys in FLSA and New York Labor Law actions, provided that the attorney fees do not disproportionately compensate the attorneys for the time and effort expended in the litigation. *See, e.g., Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *Agudelo v. E & D LLC*, No. 12-CV-960, 2013 WL 1401887, at *3 (S.D.N.Y. Apr. 4, 2013) (noting in context of FLSA and New York Labor Law collective action that "a fee that is one-third of the fund is typical" (internal quotation marks omitted)); *Febus v. Guardian First Funding Grp.*, LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[A] fee that is one-third of the fund is typical, and courts in this district have awarded 33% of substantially larger settlement funds in similar combined FLSA–NYLL wage and tip class actions"). Courts in the Second Circuit have consistently held that the 33% benchmark is appropriate, even in cases where plaintiffs have settled their claims individually or where no "common fund" has been created. *See, e.g., Lopez v. Ploy Dee, Inc.*, No. 15-CV-647, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016) (holding that where the plaintiff settled claims individually, "a 37% fee is excessive, and that a reasonable fee would be one third of the total settlement amount"); *Johnson*, 2016 WL 6493157, at *2 (stating that where the plaintiff settled claims individually, a "fee award of 80% of the [s]ettlement is beyond the pale" because "[e]ven in the most "extraordinary cases, courts in this District have declined to award fees representing more than one-third of the total settlement amount" (internal citation omitted).).

8

Indeed, courts in the Second Circuit "regularly reduce awards exceeding this threshold to one third or lower of the total recovery." *See Lopez v. Poko-St. Ann L.P.*, No. 15-CV-4980, 2016 WL 1319088, at *2 (S.D.N.Y. Apr. 4, 2016); s*ee also, Pla v. Renaissance Equity Holdings LLC*, No. 12-CV-5268, 2014 WL 113721, at *2–3 (S.D.N.Y. Jan. 13, 2014) (reducing a fee award from 44% of the settlement fund to 33%); *Cisneros v. Schnipper Restaurant LLC*, No. 13-CV-6266, 2014 WL 67235, at *2 (S.D.N.Y. Jan. 8, 2014) (reducing a fee award from 40% of the settlement fund to 25%); *Guzman*, 2013 WL 2898154, at *4 (citing cases in reducing a fee award from 40% of the settlement fund to 25% as to one plaintiff and 20% as to another settling party); *cf. Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 358–59 (W.D.N.Y. 2012) (discussing proportionality of settlements to fee requests and reducing attorneys' fees in part on that basis). While the requested fee award of $8,000 is less than the $20,971.50 billable fee for the hours plaintiff's counsel worked on this case, (*see* Weisenberg Letter 3), this fact is "insufficient to justify either the application of the [lodestar] method or the award of a higher fee," *Thornhill*, 2014 WL 1100135, at *3 (internal quotation marks omitted).

Additionally, this case involves a relatively straightforward wage-and-hours lawsuit and has not progressed beyond the preliminary stage of discovery. This is clear from "the [P]arties' joint application in support of the settlement, and the fact that . . . [the Parties] have litigated no motions" in the present case. *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 230 (S.D.N.Y. 2016). Further, the case "lacks any special circumstances that might justify a fee exceeding the presumptive one-third ceiling, let alone a fee representing a majority of the settlement." *Id.* at 230; *see also Lopez v. Ploy Dee, Inc.*, 2016 WL 1626631, at *4 ("[A] run-of-the-mill wage and hour action involving . . . [no] exceptionally complex or novel issues of fact, law, or case management . . . does not present 'unusual circumstances' that would justify

9

departing from the consensus in this district that fees higher than one third of the total settlement amount in a FLSA case are unreasonable."). While the "quality of the recovery achieved by Plaintiff['s] counsel" may represent a favorable outcome for the Plaintiff[], this is a consideration that justifies, at most, "an award at the upper end of the range of common awards—namely, 33% of the total settlement." *Lazaro-Garcia*, No. 15-CV-4259, 2015 WL 9162701, at *4 (S.D.N.Y. Dec. 15, 2015); *see also Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435–39 (S.D.N.Y. 2014) (finding that where "[t]he quality of representation was unquestionably high . . . 20% of the fund is a reasonable attorney's fee.").

Given the straightforward nature and relatively early stage of this case, the Court finds that attorneys' fees "in excess of one-third of the settlement amount disserve[] the FLSA's important interest in fairly compensating injured plaintiffs." *Run Guo Zhang*, 2015 WL 5122530, at *4; *see also Amaro v. Barbuto, LLC*, No. 16-CV-1581, 2017 WL 476730, at *4 (S.D.N.Y. Feb. 2, 2017) (reducing the fee award to reflect the unique circumstances of the case while ensuring the fees were low enough to serve the purposes of the FLSA); *Lazaro-Garcia*, 2015 WL 9162701, at * 4 (finding fees representing 39% of total settlement value excessive in a "fairly straightforward" FLSA action). Accordingly, if the Parties wish to reapply for approval of the settlement, they should request a fee award that is one-third of the net settlement amount, with any difference between the proposed award of attorneys' fees and the reduced award going to Plaintiff. *See Thornhill v. CVS Pharmacy, Inc.*, No. 13-CV-5507, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (holding, in an FLSA case, that "[t]he difference between the proposed award of attorney's fees and the reduced award shall be distributed among Plaintiffs . . . ."); *Pla*, 2014 WL 113721, at *3 (same).

For the foregoing reasons, the Parties' joint Motion is denied without prejudice. The Parties may reapply for approval of a settlement that (1) contains a narrower release provision, (2) allows the Court to determine Defendants' potential liability exposure, and (3) provides for revised attorneys' fees.

SO ORDERED.

Dated: White Plains, New York
      October 25, 2018

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE